COMMONWEALTH vs. DALTON SIMPSON.

Suffolk. March 9, 2001. - July 13, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Practice, Criminal,* Severance, Trial of indictments together, Venue, Discovery, Voluntariness of statement, Assistance of counsel, Argument by prosecutor, Instructions to jury, Presumptions and burden of proof, Capital case. *Malice. Evidence,* Exculpatory, Relevancy and materiality, Presumptions and burden of proof. *Homicide.*

At a criminal trial, the judge did not abuse her discretion in denying the defendant's motion to sever an unlawful possession of a firearm indictment from other indictments, where the offenses involved were clearly related as they were based on the same criminal conduct. [575-576]

At a criminal trial, the judge did not abuse her discretion in denying the defendant's motion for a change of venue, where the judge acted appropriately to assure that impartial jurors were selected, and where the defendant failed to show that publicity surrounding the trial deprived him of a fair trial. [576]

At a criminal trial, there was no error in the judge's denying the defendant's request for the victim's personnel records, where those records were irrelevant. [576-577]

A criminal defendant was not prejudiced by the Commonwealth's failure to preserve the van in which the victim was shot, where the judge's finding that the Commonwealth had not acted in bad faith in returning the van to the victim's family was uncontested, the defendant had nine months in which to view the van, any evidence that the defendant may have gleaned from the angle of shots hitting the van was not material in light of eyewitness testimony that the defendant had aimed and repeatedly shot at the victim, and the defendant had access to photographs showing bullet holes in the van's windshield and was able to present his theory of self-defense through cross-examination of the Commonwealth's expert witness. [577-578]

At a murder trial, the judge's admission of a statement made by the defendant at a hospital, following his arrest and his receipt of Miranda warnings, on the grounds that the statement was voluntary and that it was admissible as evidence of the defendant's state of mind and his consciousness of guilt, did not violate the defendant's Federal and State constitutional rights to due process and to a fair trial [578-580]; further, the statement was admissible as evidence of deliberate premeditation once it was determined that the evidence was relevant to the defendant's state of mind at the time of the shooting [580], and counsel did not render ineffective assistance in failing to present certain evidence at voir dire that, the defendant alleged,

would have altered the judge's decision on the issue of voluntariness [580-582].

At a murder trial, although the judge should not have admitted evidence that the police found a police scanner and some of the defendant's blood in his own motor vehicle, and an assault weapon case label, where such evidence was not probative of any issue in the trial, in view of the overwhelming evidence of the defendant's guilt, and the minimal effect of these items, the judge's errors were insubstantial; however, there was no error in the judge's admitting evidence that the victim was licensed to carry a firearm, where such evidence, along with the fact that the victim was a police officer, was relevant to assist the jury in understanding why the victim reacted as he did and why there was a loaded gun in the victim's vehicle, and was also relevant to the defendant's claim of self-defense. [582-583]

Certain statements of the prosecutor during opening and closing argument, alleged to have been unfair attempts to appeal to the jury's sympathy, did not violate the defendant's due process rights or deny him a fair trial. [583-586]

At a murder trial, that portion of the judge's instructions to the jury on malice in regard to murder in the first degree by reason of deliberate premeditation that the defendant alleged improperly used "frame of mind" language to define malice, while improper, did not amount to reversible error, and further, that portion of the instructions that the defendant alleged improperly included all three prongs of malice and shifted the burden of proof did not create a substantial likelihood of a miscarriage of justice. [586-589]

At a murder trial, the judge's instruction to the jury on voluntary manslaughter, though erroneous, granted the defendant more protection than the law afforded him, and, therefore, could not have prejudiced him. [589-590]

At a murder trial, there was no prejudicial error created by the judge's failing to instruct the jury, over the defendant's objection, on involuntary manslaughter, where there was evidence from several eyewitnesses that the defendant aimed a loaded semiautomatic handgun directly at the victim, firing it numerous times, and no evidence was presented that the defendant did not know the gun was loaded or that he accidentally pulled the trigger. [590]

At a criminal trial, the defendant was not prejudiced by certain "finding" language in the judge's instruction to the jury. [590-591]

At a criminal trial, there was no error in the judge's failing to give an instruction in accordance with Commonwealth v. Bowden, 379 Mass. 472, 485-486 (1980), where the record established that the judge specifically permitted the defendant to argue the failure of the police to conduct a certain test in closing argument, and defense counsel did so. [591]

At a criminal trial, the judge correctly instructed the jury that evidence of a prior accident involving the defendant could be considered on issues of the defendant's intent or motive, and the judge's referring to the evidence as relevant to a pattern of operation, while error, was harmless given the strength of the Commonwealth's evidence and the fact that the remainder of the instruction was proper. [591-592]

At a murder trial, an instruction to the jury that the intentional use of a dangerous weapon allowed an inference of malice only if the Commonwealth had disproved self-defense, provocation, sudden combat and heat of passion was not warranted by any view of the evidence. [592]

At a murder trial, the judge did not err in instructing the jury to return a verdict of the "highest degree of murder" that had been proven beyond a reasonable doubt, rather than "the highest crime," where the only crimes of which the defendant could be convicted in this regard were murder in the first degree or murder in the second degree. [592-593]

INDICTMENT found and returned in the Superior Court Department on February 25, 1994.

The case was tried before *Sandra L. Hamlin*, J., and a motion for a new trial was heard by her.

*David H. Erickson* for the defendant.

*Cathryn A. Neaves*, Assistant District Attorney, for the Commonwealth.

COWIN, J. The defendant was convicted by a jury of murder in the first degree on the theory of deliberate premeditation. He was also convicted of unlawful possession of a firearm, receiving stolen property (a registration plate), and operating a motor vehicle negligently so as to endanger the public.[1] Represented by new counsel, the defendant filed a motion for a new trial, which the trial judge denied. The defendant appeals from his convictions and from the denial of his motion for a new trial. The defendant claims that (1) the judge erred in denying his motion to sever the unlawful possession of a firearm indictment from the other indictments; (2) the judge abused her discretion in denying his motion for a change of venue; (3) he was improperly denied discovery; (4) the Commonwealth failed to preserve exculpatory evidence; (5) he was denied due process, a fair trial, and the effective assistance of counsel by the improper admission of a statement he made at a hospital following his arrest; (6) the judge made several erroneous evidentiary rulings; (7) prosecutorial misconduct denied him due process and a fair trial; and (8) the judge erred in her instructions to the jury. The defendant also requests that we exercise our extraordinary power under G. L. c. 278, § 33E, to order a new trial or to reduce his

---

[1] The convictions of receiving stolen property and operating a motor vehicle negligently so as to endanger were placed on file with the defendant's consent and are not before us on appeal. See *Commonwealth* v. *Guisti*, *ante* 245, 246 n.1 (2001).

murder conviction to a lesser degree of guilt. We affirm the convictions and the order denying the motion for a new trial and decline to exercise our power under G. L. c. 278, § 33E.

*Facts and procedural history.* We summarize the evidence. On February 5, 1994, between 4 P.M. and 5 P.M., the defendant was driving his black Volkswagen Rabbit automobile, bearing a stolen registration plate, at high speeds in a residential neighborhood in the Dorchester section of Boston. He sped down Millet Street (a one-way street) and hit the vehicle of Rodney Marcellus (Marcellus), as Marcellus pulled out from a parking space into the street. The defendant got out of his car, confronted Marcellus and screamed obscenities at him. The defendant returned to his Rabbit three times, slamming his car door each time. The defendant's aggressive behavior caused a nearby witness to dial 911. When Marcellus asked for the defendant's license, the defendant returned to his car again and sped away, with tires screeching and without heeding a stop sign. Police responded to the accident scene and after they left, the defendant returned in his Rabbit. He stopped his car and spoke to three boys on the sidewalk, who ran off. The defendant then sped away.

The defendant drove the wrong way down Spencer Street, a one-way street located one block from Millet Street. He stopped in front of a Dodge Caravan (van) driven by the victim, Berisford Wayne Anderson, an off-duty Boston police officer, who had just pulled out of his driveway onto the street. The van was going in the correct direction. The defendant got out of his Rabbit and stood toward the front of his automobile. The victim opened his driver's side door and leaned out. The two men exchanged words briefly. The defendant then lifted his hand and began shooting at the victim. The victim leaned into his vehicle, came out with a .38 caliber handgun, and returned fire. The victim ran to the back passenger side of his van and the defendant ran to the driver's side of his Rabbit. The two continued firing shots at one another. The defendant fired the last shot, got into his car, backed up the street and sped off. The victim tried to stand up, but fell to the ground. He died from a single gunshot wound to his chest. Several persons witnessed the incident.

As Boston police Officer Jonathan M. Stratton approached

Spencer Street in response to a radio dispatch of shots fired, he saw the defendant driving his Rabbit and followed him. The defendant parked his car in a driveway on Crowell Street. As the defendant got out of the vehicle, Stratton ordered him to stop. The defendant stood by the car and started to place his hands on the top of the vehicle, but then began running. Stratton chased him, and the defendant dropped his gun, which Stratton picked up. The gun was jammed. Stratton continued chasing the defendant. Another officer, Richard Walker (Walker), driving a cruiser, eventually joined in the chase and apprehended the defendant. Walker tackled the defendant and knocked him down in a snowbank.

Boston police Officers Robert Kenney (Kenney) and Jerry Cofield transported the defendant to a police station in a cruiser. During the ride, the defendant became agitated, stated that he was in pain, and at one point started kicking the door and the window glass. When they arrived at the station, Kenney led the defendant to the prisoner bay. As Kenney was handing a set of keys to Cofield, the defendant, who was being held by the chain between the handcuffs, started to run out of the prisoner bay. Kenney pulled in and up on the chain, and the defendant ran into the prisoner bay wall, striking and cutting his head on the wall. The officers placed the defendant in a holding cell and emergency medical technicians (EMTs) transported the defendant to the emergency room at Faulkner Hospital.

At the emergency room, Kenney remained with the defendant who was handcuffed to a stretcher. The defendant was agitated at times and at other times calm. While waiting for a doctor, the defendant stated, "If I had a bullet, I'd shoot the cop that hurt my head."

The defendant did not testify at trial. His defense was that he acted in self-defense. The defendant's witnesses were a ballistics expert, and one of the EMTs who transported him to the hospital. The ballistics expert, Carl M. Majeskey, testified that he had examined the defendant's firearm, which appeared to have been thrown and damaged. He stated that a gun such as the defendant's may jam when it strikes the pavement. The

EMT, Charles Haight, testified that he had treated the defendant's head injury and that the defendant had related that he had been assaulted. He also said that the defendant was extremely agitated, cried, and was hysterical, uncooperative, and belligerent, spitting at the EMTs.

Approximately two years after his convictions, the defendant, represented by new counsel, moved for a new trial[2] on the ground that trial counsel provided ineffective assistance during the hearing on the voluntariness of the defendant's statement at the hospital that, "If [he] had a bullet, [he] would shoot the cop [Kenney] that hurt [his] head." The defendant contends that trial counsel failed to introduce certain evidence that would have altered the judge's decision regarding voluntariness: (1) all the defendant's medical records from the hospital concerning the treatment of the head injury he sustained at the police station; and (2) testimony that, several hours before the murder, one of the defendant's friends, Anthony Gordon, declined a ride with the defendant due to the defendant's alleged intoxication. The motion judge, who was the trial judge, denied the motion for a new trial.

1. *Severance.* The defendant claims that the judge erred in failing to sever the unlawful possession of a firearm indictment from the remaining indictments and that the resulting prejudice denied him a fair trial. Specifically, the defendant argues that evidence of the illegal possession of the weapon portrayed him as a person with a "complete disregard for human life." Rule 9 (a) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 859 (1979), provides that offenses are related "if they are based on the same criminal conduct." The trial judge "shall join" charges for "related offenses" for trial "unless [the judge] determines that joinder is not in the best interests of justice." Mass. R. Crim. P. 9 (a) (3), 378 Mass. 859 (1979). See *Commonwealth* v. *Sylvester*, 388 Mass. 749, 758 (1983).

The decision regarding joinder of related offenses rests in the trial judge's discretion. *Commonwealth* v. *Delaney*, 425 Mass. 587, 593 (1997), cert. denied, 522 U.S. 1058 (1998). Offenses are "related" when the evidence "in its totality shows a com-

---

[2]The defendant's appeal from his convictions was pending at this time. See *supra* at 572.

mon scheme and pattern of operation that tends to prove all the indictments." *Id.* at 594, quoting *Commonwealth* v. *Feijoo*, 419 Mass. 486, 494-495 (1995). The offenses here were clearly related as they were based on the same criminal conduct, the defendant's irrational and aggressive behavior on the afternoon of February 5, 1994. The weapon the defendant used to kill the victim is the gun that is the subject of his indictment charging unlawful possession of a firearm. The evidence regarding the firearm charge was intertwined with the evidence concerning the indictments charging murder, possession of a stolen registration plate, and operating a motor vehicle to endanger. The decision to deny the motion to sever was within the sound discretion of the trial judge. *Commonwealth* v. *Jervis*, 368 Mass. 638, 645 (1975), and cases cited.

2. *Change of venue.* The defendant contends that the judge abused her discretion by failing to transfer the case to another county because the pretrial publicity surrounding this incident was "extensive and grossly prejudicial." Trial judges should "exercise . . . discretion to change venue . . . 'with great caution and only after a solid foundation of fact has been first established.' " *Commonwealth* v. *James*, 424 Mass. 770, 775-776 (1997), quoting *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 551 (1990). Substantial publicity does not mandate transfer of a trial. See *Commonwealth* v. *James*, *supra* at 776. A change of venue is allowed in order to secure an impartial trial. *Crocker* v. *Superior Court*, 208 Mass. 162, 175 (1911). Here, the judge acted appropriately to assure that impartial jurors were selected. Members of the venire were asked whether they had heard, read, or seen anything about the case from any source. Each person who answered affirmatively was questioned regarding his or her ability to be impartial and the judge dismissed several jurors who indicated that the publicity would affect their ability to be impartial. Only those who assured her of their "disinterest and freedom from emotional or intellectual commitment," *Commonwealth* v. *James*, *supra* at 777, quoting *Commonwealth* v. *Bianco*, 388 Mass. 358, 368, *S.C.*, 390 Mass. 254 (1983), were seated. The defendant has not shown that the publicity surrounding this case deprived him of a fair trial.

3. *Denial of discovery.* The defendant argues that he was

denied the right to effective confrontation and cross-examination of government witnesses because he was improperly denied discovery of the victim's personnel records including those related to the victim's use of firearms or force. (The defendant's request for these records was originally denied by a motion judge. His renewed motion was denied at trial.)

There was no error in denying the defendant's request for the victim's personnel records because those records were irrelevant. If the evidence could raise a reasonable doubt whether the defendant acted in self-defense in killing the victim, evidence of the victim's character as " 'a powerful, dangerous, quarrelsome or violent person, if known to the defendant, may be admitted' as tending to show the defendant's reasonable apprehension for his safety." *Commonwealth* v. *Fontes*, 396 Mass. 733, 735 (1986), quoting *Commonwealth* v. *Rubin*, 318 Mass. 587, 588 (1945). Although the defendant here claimed self-defense, the defendant never placed before the judge either at trial or at the motion hearing any evidence that the victim was the aggressor, that the victim took out his gun before the defendant shot at him, that the victim fired first, or that the defendant was aware at the time of the incident of any acts of violence by the victim.[3]

4. *Failure to preserve exculpatory evidence.* The defendant next asserts that the Commonwealth failed to preserve the victim's van. The defendant claims that his ballistics expert needed to examine the van to ascertain the angles of the bullet holes in that vehicle to support the theory that the defendant's shooting was wild at first and not intended to hit the victim. "[W]hen potentially exculpatory evidence is lost or destroyed, a balancing test is employed to determine the appropriateness and extent of remedial action. The courts must weigh the culpability of the Commonwealth, the materiality of the evidence and the potential prejudice to the defendant." *Commonwealth* v. *DiBenedetto*, 427 Mass. 414, 419 (1998), quoting *Commonwealth* v. *Willie*, 400 Mass. 427, 432 (1987).

---

[3]The defendant also claims that he was improperly denied pretrial disclosure of the opinions of the Commonwealth's expert witness. This argument is not supported by reasoned argument or citation and thus does not constitute proper appellate argument. *Commonwealth* v. *Bowler*, 407 Mass. 304, 310 (1990), citing Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

The defendant does not contest the judge's finding that the Commonwealth did not act in bad faith in returning the van to the victim's family. The defendant's claim of materiality or potential prejudice is substantially undermined by the fact that he had at least nine months (during which he was represented by counsel) in which to view the van. As to materiality, evidence of the angles of the shots that might have been gleaned from examination of the van was not material because there was eyewitness testimony that the defendant aimed and repeatedly shot at the victim. "Evidence is material if, in considering the entire record, it creates a reasonable doubt as to the defendant's guilt that would not otherwise exist." *Commonwealth* v. *Otsuki,* 411 Mass. 218, 231 (1991). The defendant was not prejudiced. The defense had access to photographs showing the bullet holes in the van's windshield, and the defendant was able to present his theory of wild shooting in self-defense through cross-examination of the Commonwealth's expert and he was able to argue this theory in his closing.

5. *Admissibility of statement.* The defendant contests the admission of the following statement made at the hospital after his arrest and his receipt of Miranda warnings: "If I had a bullet, I would shoot the cop that hurt my head." When the defendant objected to the admission of this statement at trial, the judge conducted a voir dire on the voluntariness of the statement. She concluded that the statement was voluntary and that it was admissible as evidence of the defendant's state of mind and his consciousness of guilt. The defendant maintains that the admission of the statement violated his Federal and State constitutional rights to due process and to a fair trial, because (a) the statement was not relevant; (b) even if it were relevant, the statement was more prejudicial than probative; and (c) the statement was not voluntary. He further claims that if the statement were properly admitted, the judge erred by failing to instruct the jury that postkilling conduct is not relevant to deliberate premeditation. Finally, the defendant states that trial counsel rendered ineffective assistance in failing to present certain evidence at the voir dire that would have altered the judge's decision on the issue of voluntariness.

Whether evidence is relevant and whether its probative value

is substantially outweighed by its prejudicial effect are matters entrusted to the trial judge's broad discretion and are not disturbed absent palpable error. *Commonwealth* v. *Marrero*, 427 Mass. 65, 67-68 (1998). There was no error. The defense in this case was self-defense as was clear from the defendant's opening statement. The statement in issue, made shortly after the defendant killed the victim, indicated the defendant's aggressive and threatening behavior on the afternoon in question and thus had a "rational tendency to prove a material issue," the defendant's state of mind. See *Commonwealth* v. *Martinez*, 431 Mass. 168, 173 (2000). Such a statement in other circumstances could tend to prove guilt by evidence of bad character. But here, given the fact that the statement was consistent with substantial other evidence regarding the defendant's behavior during the course of the day of the murder, the number of witnesses to the shooting, the defendant's later flight, and his attempt to escape from the police, the judge acted within her discretion in determining that any potential prejudicial effect of the statement did not outweigh its probative value. *Commonwealth* v. *Marrero, supra.*[4]

The judge's conclusion that the statement was voluntary was supported by proof beyond a reasonable doubt. *Commonwealth* v. *Tavares*, 385 Mass. 140, 152, cert. denied, 457 U.S. 1137 (1982). During the voir dire, Officer Kenney testified that the defendant was "alert and oriented" at the hospital, "seemed to be in control," "seemed to know . . . what he was doing," and responded appropriately to the doctor's questions to him. A medical report described the defendant as "awake alert belligerent." This evidence warranted the judge's conclusion. Evidence of the defendant's head injury and that at times at the hospital he was loud, boisterous, and agitated, does not require a different conclusion. See *Commonwealth* v. *Benoit*, 410 Mass. 506, 515 (1991) ("fact that [the defendant] may have been suffering from a psychotic condition before and after statements were made, does not compel a conclusion that the statements

---

[4]Because we conclude that the statement was relevant as evidence of the defendant's state of mind, we need not consider the judge's ruling that the statement was admissible to show consciousness of guilt.

were involuntary'' where there was testimony that statements were made during lucid interval). The fact that the defendant was intoxicated is a factor to be considered, but does not negate an otherwise voluntary act. See *Commonwealth* v. *Shipps*, 399 Mass. 820, 826-827 (1987).[5]

The defendant next argues that the judge erred by failing to instruct the jury, in regard to the above statement, that they may not use postkilling conduct as evidence of the degree of guilt, especially deliberate premeditation, unless they were convinced beyond a reasonable doubt there was a plan with respect to this conduct before the killing. See *Commonwealth* v. *Rice*, 427 Mass. 203, 209-210 (1998). Once it is determined that such evidence is relevant to the defendant's state of mind at the time of the shooting, however, the postkilling conduct is admissible as evidence of deliberate premeditation. The key here is relevance, and, as discussed above, the evidence was relevant.

The defendant's final argument concerning this statement is that trial counsel was ineffective for failing to introduce at the voluntariness hearing (a) all the medical records from Faulkner Hospital; and (b) evidence that before the murder, his friend, Anthony Gordon, refused to ride with him due to the defendant's intoxication. In regard to the medical records, the defendant claims the additional pages would have been helpful because (a) they indicate that he was yelling "my fucking head" while he was in the emergency room; and (b) contain the following statements from a radiologist: his impression of X-rays of the facial bones was that it was "[i]ncomplete [and] somewhat limited," and that "[i]f clinically there is suspicion for fracture then either a repeat study when the patient is not intoxicated or preferably a CT examination could be used for further clarification." The defendant claims that if his counsel had introduced these remaining hospital records and the statement of Anthony Gordon, the judge would have concluded that the statement at the hospital was not voluntary. He does not explain in his brief why the additional evidence would have changed

[5]The judge instructed in accord with our "humane practice" ("that the Commonwealth has the burden of proving beyond a reasonable doubt that the statement was voluntary and that the jurors must disregard the statement unless the Commonwealth has met its burden," *Commonwealth* v. *Tavares*, 385 Mass. 140, 152, cert. denied, 457 U.S. 1137 [1982]).

the judge's conclusion, but in his memorandum supporting his motion for a new trial, the defendant states that this evidence would have demonstrated that his head injury and intoxicated state rendered the statement involuntary.

Here, because the defendant was convicted of murder in the first degree, we review these allegations under the substantial likelihood of a miscarriage of justice standard required by G. L. c. 278, § 33E, a standard more favorable to a defendant than the traditional standard for determining ineffective assistance of counsel. *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992). In her memorandum of decision on the motion for a new trial, the judge rejected the defendant's claims, concluding that trial counsel's judgments regarding the additional medical records were reasonable tactical ones. The omitted medical records did not demonstrate that the defendant "suffered a mind impairing injury, rendering him unable to control what he was saying." Indeed, they state that the defendant was "awake alert and belligerent" and was released within about two hours. Similarly, Gordon's testimony regarding the state of the defendant's sobriety was only that the defendant appeared "[a] little tipsy," and this observation was made by Gordon hours before the murder.[6]

Finally, the judge was correct in determining that, even if counsel's decisions were manifestly unreasonable, the defendant had failed to show any prejudice therefrom. The admission of the statement was unlikely to have unfairly influenced the verdict. The statement was admitted to demonstrate premeditation and there was ample other evidence of the defendant's premeditation. Eyewitnesses testified to the details of the shooting and that the defendant fired the first shot. Their testimony also demonstrated that the shot that killed the victim was fired by the defendant. The sequence of events was that the defendant

---

[6]The judge did not refer to the radiologist's reference to another study "when the patient is not intoxicated." However, this reference without further specification would not have aided the defendant. Although, as noted, a defendant's intoxication is a factor to be considered, there was substantial contrary evidence (Officer Kenney's testimony and the medical report that was introduced). As the judge concluded that the statement was voluntary, she implicitly found that the defendant was not sufficiently intoxicated to render the statement involuntary and there was evidence to support that finding.

stopped his car in front of the victim's van and got out of his car; a few words were exchanged, and then the defendant started shooting at the victim, and continued shooting after the victim had produced his own gun and returned fire. This is clearly strong evidence of a plan to kill. See *Commonwealth* v. *Andrews*, 427 Mass. 434, 440 (1998) (evidence that defendant, in company of two other males, one of whom was also armed, fired four shots at close range at unarmed victim who died of gunshot wounds more than sufficient to warrant finding of deliberate premeditation); *Commonwealth* v. *Jenks*, 426 Mass. 582, 585 (1998) (finding of deliberate premeditation supported by evidence that two shots were fired at shoulder level, and there was appreciable pause between upwardly fired shots and two shoulder-level shots, suggesting that defendant paused to search out and aim at particular person); *Commonwealth* v. *Williams*, 422 Mass. 111, 123 (1996) ("The use of a firearm in the killing is sufficient to support a verdict of murder in the first degree based on deliberately premeditated malice aforethought"); *Commonwealth* v. *Good*, 409 Mass. 612, 617-618 (1991) (sufficient evidence to support finding that, before shooting, defendant at least briefly reflected on his resolution to kill victim when defendant, armed with handgun, left parked car, approached victim [crossing street to do so], and shot him at close range; three bullets all struck victim in vital areas, including back of head); *Commonwealth* v. *Walker*, 401 Mass. 338, 343 (1987) (use of gun at close range supports jury finding of deliberate premeditation).

6. *Evidentiary rulings.* The defendant alleges error in the admission of the following evidence (to all of which he objected at trial): (a) a police scanner and his own blood found in his car; (b) that a gun case was labeled by its manufacturer as an "assault systems weapon case"; and (c) that the victim was licensed to carry a firearm.

The defendant claims that the evidence of a police scanner and his blood found in his car were not tied to the crimes charged, but simply suggested other bad acts by the defendant. Again, whether evidence is relevant and whether its probative value is substantially outweighed by its prejudicial effect are matters entrusted to the trial judge's broad discretion and are

not disturbed absent palpable error. *Commonwealth* v. *Marrero,* 427 Mass. 65, 67-68 (1998). The evidence that the police found a police scanner and some of the defendant's blood in his car does not appear to be probative of any issue in the trial and should not have been admitted.[7] A similar analysis applies to the admission of the assault weapon case label to which the defendant timely objected. This evidence was not probative of any issue and it was prejudicial. It suggests that, because the defendant possesses an assault weapon, he is a dangerous person, i.e., it is evidence of bad character. However, in view of the overwhelming evidence of the defendant's guilt, and the minimal effect of these items, these errors were insubstantial.[8] See *Commonwealth* v. *Arce,* 426 Mass. 601, 603 (1998).

The defendant claims that the evidence that the victim was licensed to carry a firearm was irrelevant or overly prejudicial as it suggested illegality in the defendant's use of his gun, while the victim's use of a gun was legal. The fact that the victim was licensed to carry a firearm, together with the fact that he was a police officer, was relevant to assist the jury in understanding why the victim reacted as he did and why there was a loaded weapon in his vehicle. This evidence was also relevant to the defendant's claim of self-defense. There was no error in admitting this evidence.

7. *Opening statement and closing argument.* The defendant maintains that one of the prosecutor's remarks during her opening statement and three of her remarks in closing argument were unfair attempts to appeal to the jury's sympathy, thus violating his due process rights and denying him a fair trial. The defendant first contends that the prosecutor, in her opening statement, improperly sought to elicit juror sympathy by stating that the evidence would show how different the defendant and

---

[7]The Commonwealth unconvincingly suggests that this evidence "provided the jury with a more complete picture of the crimes as a whole."

[8]The standard of review for objected-to errors is whether "the conviction is sure that the error did not influence the jury, or had but very slight effect . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Commonwealth* v. *Flebotte,* 417 Mass. 348, 353 (1994), quoting *Commonwealth* v. *Peruzzi,* 15 Mass. App. Ct. 437, 445 (1983).

the victim were from each other. The prosecutor stated that the victim was "a family man, a man trained and devoted to the protection of others," while the defendant had "complete disregard for human life." The defendant objected; thus, we review to determine whether the remarks were improper, and, if so, whether "substantial rights were . . . affected." *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), quoting *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983). See note 9, *supra*.

The prosecutor may state in her opening what she expects the evidence to prove, see *Commonwealth* v. *Fazio*, 375 Mass. 451, 454 (1978), and cases cited. Evidence consists only of relevant facts. It is not relevant that the victim is a "good" person and that the defendant is a "bad" person, even assuming that these characterizations are accurate. Thus, the prosecutor's statement was improper. However, the judge instructed immediately before the openings that the opening statements of counsel were not evidence.[9] Given this instruction and the strength of the Commonwealth's evidence, we conclude that substantial rights were not affected.

The defendant challenges portions of the prosecutor's closing argument. First, he objects to the statement that it was "sad" that at the time of the killing the dangerous part of the officer's day was supposed to be over and that he should have been able to relax at that point with his family. Again, the defendant objected to this statement, and so we review to determine whether the remarks were improper, and, if so, whether "substantial rights were . . . affected." *Commonwealth* v. *Flebotte, supra* at 353, quoting *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983). See note 9, *supra*. This remark was improper. Although the prosecutor may "tell the jury something of the person whose life had been lost in order to humanize the proceedings," see *Commonwealth* v. *Santiago*, 425 Mass. 491, 495 (1997), *S.C.*, 427 Mass. 298, and 428 Mass. 39, cert. denied, 525 U.S. 1003 (1998), the fact that the officer should have been

---

[9]This warning was repeated in the judge's instructions prior to the closing arguments: "[A]s I told you concerning an opening statement, a closing argument is not evidence."

able to relax with his family does not describe him and has no relevance to the defendant's guilt.

The Commonwealth argues that the prosecutor could respond in this fashion to the defense statement in closing that character-ized the victim as "a black presence in a black, dark, hooded sweat suit . . . with no identification as a police officer, as he got outside of the car." This argument does not persuade us of the relevance of the challenged statement. It is clear from the record that the defendant was aware of the victim's clothing, but had no way of knowing that the victim was a police officer who had completed his shift. Thus, the characterization of the victim rebuts nothing that is meaningful with regard to whether the defendant acted in self-defense. This was an isolated remark in the closing, and the judge carefully instructed: "Personal opinions of counsel are not evidence. If counsel expressed any opinions, they are advocates." Viewing the argument in its entirety, the impropriety by the prosecutor, to which timely objection was made, is unlikely to have affected the jury's verdict, and therefore is not cause for reversal. See *Com-monwealth* v. *Barros*, 425 Mass. 572, 582 (1997). Cf. *Com-monwealth* v. *Loguidice,* 420 Mass. 453, 456-457 (1995) (no curative instructions given); *Commonwealth* v. *Kozec*, 399 Mass. 514, 526 (1987) (prosecutor's closing argument exceeded limits of reasonable inferences from evidence, requiring reversal of conviction).

The defendant next claims (without citation) that the prosecu-tor improperly stated: "No one's supposed to be shooting at you when you're on your own street, when you're just feet from your house with your family inside." Although the defendant characterizes this as asking the jury to place themselves in the shoes of the victim, it is simply a rhetorical statement. *Commonwealth* v. *Beauchamp*, 424 Mass. 682, 691 (1997). Further, the statement is a fair inference from the Com-monwealth's evidence that the defendant was shooting at the victim and that there was no issue of self-defense. The passage describes the fact that the victim was not seeking a fight and "that the whole attack was totally unprovoked, senseless, and unnecessary. There was no excessive reference to [the victim's] family . . . ." *Commonwealth* v. *Degro, supra* at 326. Cf. *Com-*

*monwealth* v. *Santiago, supra* at 494-495 (impermissible appeal to sympathy where prosecutor seven times stated young victim's age and pregnancy and four times referred to her birth date in relation to the murder).

The defendant asserts that the prosecutor improperly labeled a defense argument an "insult." The remark was designed to demonstrate the lack of evidence to support the self-defense claim and amounted to no more than "enthusiastic rhetoric," see *Commonwealth* v. *Wilson,* 427 Mass. 336, 350 (1998), quoting *Commonwealth* v. *Sanna,* 424 Mass. 92, 107 (1997) ("enthusiastic rhetoric" not ground for reversal and juries presumed to have measure of sophistication to sort out excessive claims).[10]

8. *Jury instructions.* The jury convicted the defendant of murder in the first degree by reason of deliberate premeditation. The judge instructed on murder in the first degree; murder in the second degree; and voluntary manslaughter. She also instructed on self-defense. In her instructions on murder in the first degree by reason of deliberate premeditation, the judge explained the three elements: an unlawful killing, deliberate premeditation, and malice aforethought. We discuss each of the instructions in more detail with respect to the defendant's claims of error.

On appeal, the defendant argues that the jury instructions (a) were erroneous in three respects in regard to malice; (b) improperly instructed in regard to voluntary manslaughter that it was the burden of the Commonwealth to prove the elements of heat of passion, reasonable provocation, or sudden combat; (c) failed to contain an instruction on involuntary manslaughter; (d) erroneously included the use of "finding" language; (e) did not include a "failure to test" instruction; (f) improperly stated that the jury could consider evidence of the prior accident on Millet Street as evidence of "modus operandi"; (g) failed to explain how the use of a dangerous weapon allows an inference of

[10]The defendant also maintains that the prosecutor improperly criticized trial counsel's challenge to the credibility of witnesses and referred to defense arguments as if they were the personal arguments of defense counsel. However, the defendant does not refer us to any portion of the argument concerning these contentions and thus we do not consider them. Cf. *Commonwealth* v. *Silva,* 401 Mass. 318, 329 n.12 (1987).

malice; and (h) improperly instructed the jury to return a verdict of the highest degree of murder found. We shall consider each argument in turn. Before doing so, we note the proper standard of review. When timely objection was made, we review to determine if there were error and, if so, whether it was reversible error. If there were no objection to the instruction, we review to determine if there were error, and if so, whether the error created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *O'Brien*, 432 Mass. 578, 591-592 (2000).

(a) *Malice instructions.* The defendant alleges that the judge erred in three respects in the jury instructions on malice in regard to murder in the first degree by reason of deliberate premeditation. He claims that the instructions improperly (i) used "frame of mind" language to define malice; (ii) included all three prongs of malice; and (iii) shifted the burden of proof.

(i) *"Frame of mind" language.* The defendant first complains that the charge defining malice was defective because it contained the "frame of mind" language which was disapproved in *Commonwealth* v. *Eagles*, 419 Mass. 825, 836 (1995):[11] "[such language] is not helpful . . . because it may lead the jury to believe that anger, hatred, revenge or a selfish, wrongful mood is enough to show malice." The defendant timely objected to this instruction. Use of this language was improper, but did not amount to reversible error.[12]

The evidence "left little doubt about the defendant's intent to kill." *Commonwealth* v. *Johnson*, 426 Mass. 617, 622 (1998). All the testimony was that the defendant, after engaging in a brief verbal exchange with the victim, repeatedly shot at him from about ten to fifteen feet away. See *Commonwealth* v. *Dahl*, 430 Mass. 813, 826 (2000) ("frame of mind" language could not have had any impact on jury's decision to convict in view of nature of killing committed, beyond any reasonable doubt,

---

[11]The judge instructed, over objection: "Malice aforethought refers to a frame of mind which includes not only anger, hatred and revenge but also every other unlawful and unjustifiable motive."

[12]*Commonwealth* v. *Eagles*, 419 Mass. 825 (1995), was decided a little more than one month after the defendant's trial. Thus, the judge in this case did not have the benefit of the advice in the *Eagles* case that such language "is not helpful and ought in the future to be omitted." *Id.* at 836.

with no less than intent to inflict injuries that would cause victim's death).

(ii) *Three prongs of malice.* Because only the first prong of malice can support a conviction of deliberately premeditated murder, see *Commonwealth* v. *Jiles*, 428 Mass. 66, 72 (1998); *Commonwealth* v. *Judge*, 420 Mass. 433, 441 (1995), the judge improperly instructed the jury when she instructed on the three prongs of malice. The defendant did not object to this instruction. Read as a whole, the instructions clearly conveyed to the jury the requirements for conviction of premeditated murder: (1) a plan to murder; (2) a decision to kill after a period of deliberation; and (3) a "resolution to kill . . . the product of cool reflection." The judge further instructed that deliberate premeditation requires that the defendant "thought before he acted," but that deliberate premeditation does not require any set time, "[d]eliberation may be a matter of days, hours or even seconds."

Premeditation, as defined by the judge in this case, contains as a necessary condition of guilt the specific intent to kill. Because the jury returned a verdict of murder in the first degree on the premeditation theory, there can be no doubt that they in fact found that the defendant had a specific intent to kill the victim. Thus, the jury found malice aforethought on the first prong of malice, which is met by proof of a specific intent to kill, see *Commonwealth* v. *Waite*, 422 Mass. 792, 804-805 (1996), and the error did not create a substantial likelihood of a miscarriage of justice.[13]

(iii) *Burden of proof.* The defendant argues that the following language impermissibly relieved the Commonwealth of its burden of proof and created a presumption of malice. "Any

---

[13]*Third prong of malice.* The defendant also claims that the judge errone-ously instructed that the third prong of malice includes "doing an act which creates a plain and strong likelihood that death or grievous bodily harm would follow." *Commonwealth* v. *Fuller*, 421 Mass. 400, 412 (1995). Because, as discussed above, she should not have instructed on third prong malice at all, the resolution of this issue is encompassed by our discussion of the erroneous instruction on the three prongs of malice. "Error in a . . . third prong instruc-tion is not prejudicial where the jury convicts by reason of deliberate premeditation, because deliberate premeditation necessarily requires the jury to find a specific intent to kill, which satisfies the first prong of malice." *Com-monwealth* v. *Johnson*, 426 Mass. 617, 622 (1998).

intentional killing of a human being without legal justification or excuse, with no extenuating circumstances sufficient in law to reduce a crime to manslaughter, is malicious within the meaning of malice aforethought."[14] We have recently said that nearly identical language "is acceptable where . . . the instructions make it clear there is no mandatory presumption of malice and the rest of the instructions effectively negate any burden shifting by squarely placing the burden on the Commonwealth." *Commonwealth* v. *Giguere*, 420 Mass. 226, 230 (1995). As in the *Giguere* case, the judge here repeatedly referred to the Commonwealth's burden of proof as to all elements.[15] She also clearly explained the presumption of innocence and stated that the defendant bore no burden to prove his innocence. There was no substantial likelihood of a miscarriage of justice.

b. *Voluntary manslaughter — mitigating factors.*[16] The judge instructed on voluntary manslaughter. In this case, however, the defendant was not entitled to an instruction on voluntary manslaughter at all. There was no evidence of any interaction between the victim and the defendant other than a brief verbal exchange before the defendant aimed a handgun at the victim and began to shoot. Whatever conversation occurred between the two men before the defendant began shooting cannot support a voluntary manslaughter instruction. See *Commonwealth* v. *Masello*, 428 Mass. 446, 449 (1998) (even heated argument does not "constitute adequate provocation" that would warrant voluntary manslaughter instruction). Although the instructions contained the so-called *"Acevedo"* error, see *Commonwealth* v. *Acevedo*, 427 Mass. 714, 716 (1998) (error to state that it is Commonwealth's burden to prove mitigating factors of heat of passion, reasonable provocation or sudden combat; in fact it is Commonwealth's burden to *disprove* these factors), these instructions were given in the context of the judge's instructions on voluntary manslaughter. The instruction given, though erroneous, granted the defendant more protection than the law af-

---

[14]The defendant did not object to this instruction.

[15]She again made these statements in responding to a question from the jury.

[16]The judge also instructed on murder in the second degree. No error is claimed in that regard.

forded him, and, therefore, could not have prejudiced him. *Commonwealth* v. *Roderick*, 429 Mass. 271, 278-279 (1999).

c. *Involuntary manslaughter*. The defendant urges that the judge committed prejudicial error by failing to instruct the jury, over his objection, on involuntary manslaughter. Involuntary manslaughter is an unlawful homicide (1) where wanton and reckless conduct causes death, or (2) where an unintentional killing "result[s] from a battery not amounting to a felony which the defendant knew or should have known endangered human life." *Commonwealth* v. *Fryar*, 425 Mass. 237, 248, cert. denied, 522 U.S. 1033 (1997), quoting *Commonwealth* v. *Pierce*, 419 Mass. 28, 33 (1994). He claims that the instruction was required because the theory of a reckless shooting was developed during trial, i.e., that the first shots by the defendant were not intended to kill but rather to "blow out" the victim's windshield.

"An instruction on [involuntary] manslaughter is required where any view of the evidence will permit a finding of manslaughter and not murder." *Commonwealth* v. *Sires*, 413 Mass. 292, 301 (1992). "When it is obvious that the risk of physical harm to the victim creates a 'plain and strong likelihood that death would follow,' . . . an instruction on involuntary manslaughter is not warranted." *Commonwealth* v. *Fitzmeyer*, 414 Mass. 540, 547 (1993), quoting *Commonwealth* v. *Sires*, *supra* at 303. When determining whether such an instruction was required, we consider the evidence in a light most favorable to the defendant. See *Commonwealth* v. *Degro*, 432 Mass. 319, 320 (2000), quoting *Commonwealth* v. *Nichypor*, 419 Mass. 209, 216 (1994). There was evidence from several eyewitnesses that the defendant aimed a loaded semiautomatic handgun directly at the victim, firing it numerous times. The defendant did not testify and no evidence was presented that he did not know that the gun was loaded or that he accidentally pulled the trigger. There was no error. See *Commonwealth* v. *Mack*, 423 Mass. 288, 290 (1996) ("intentionally discharging a firearm in the direction of another person creates a plain and strong likelihood of death" and such evidence does not support involuntary manslaughter instruction).

d. *"Finding" language*. Here, the defendant alleges that "[i]n

reviewing the charge on every defense claim, provocation and withdrawal, the court initially placed the burden on the defendant," by the use of "finding" language. Again, because the evidence did not warrant an instruction on self-defense, the defendant obtained more than he deserved and could not have been prejudiced. See *Commonwealth* v. *Roderick, supra* at 278.

e. *Failure to test.* There was no error in failing to give a so-called *"Bowden"* instruction. See *Commonwealth* v. *Bowden,* 379 Mass. 472, 485-486 (1980). A judge need not automatically instruct a jury on claimed inadequacy of a police investigation; the decision whether to do so lies within the discretion of the trial judge. *Commonwealth* v. *Rivera,* 424 Mass. 266, 274 (1997), cert. denied, 525 U.S. 934 (1998). The judge followed the dictates of the *Bowden* case and did not remove the issue of inadequacies in the police investigation from the jury's consideration. The record establishes that the judge specifically permitted the defendant to argue the failure to test in his closing argument, and defense counsel did so.

f. *"Modus operandi."* The defendant claims that the judge improperly instructed that the jury could consider testimony regarding the defendant's prior accident on Millet Street as evidence of "modus operandi." The defendant timely objected to this instruction. Our standard of review, thus, is whether the error was harmless.[17] The judge stated that such evidence could be considered "on the issue of whether it shows the defendant's intent, the defendant's motive, or whether he was engaged in some sort of a pattern of operation." The defendant concedes that the evidence "was admitted for the purpose of intent, motive or state of mind," but objects to its "consideration . . . for modus operandi purposes, that is that the defendant caused accidents for the purposes of violence." The evidence of the prior accident was relevant to rebut the self-defense theory. It

---

[17]"[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Commonwealth* v. *Alphas,* 430 Mass. 8, 13-14 n.7 (1999), quoting *Commonwealth* v. *Flebotte,* 417 Mass. 348, 353 (1994).

indicated that the defendant was out of control, aggressive, and hostile, thereby permitting the inference that he fired at the victim from an uncontrollable anger rather than because of self-defense. Thus, the judge correctly instructed that the evidence could be considered on the defendant's intent or motive, but she should not have referred to the evidence as relevant to a pattern of operation (the equivalent of modus operandi). Given the strength of the Commonwealth's evidence, however, and the fact that the remainder of the instruction was proper, the error was harmless.[18]

g. *Inference of malice.* The defendant's next argument is that the judge did not instruct that the intentional use of a dangerous weapon allows an inference of malice only if the Commonwealth had disproved self-defense, provocation, sudden combat and heat of passion. There was no evidence of factors mitigating a finding of the defendant's malice in this case and no view of the evidence warranted such an instruction.

h. *Instruction to return verdict of highest degree of murder.* The defendant's final claim in regard to jury instructions is that the judge improperly instructed the jury to "find the defendant guilty of the highest degree of murder that the Commonwealth has proven to you beyond a reasonable doubt." The defendant asserts that the judge should have instructed the jury to "return a verdict of guilty of the highest *crime* that was proved beyond a reasonable doubt" (emphasis supplied). See *Commonwealth* v. *Anderson,* 408 Mass. 803, 808 (1990). This formulation was repeated again in the judge's supplemental instructions in response to a jury question to "provide clear distinctions . . . among murder, first degree murder, second degree and manslaughter." Again, the defendant was not entitled to an instruction on manslaughter. The only crimes of which the defendant could be convicted in this regard were murder in the first degree or murder in the

---

[18]The judge also instructed the jurors that they could not consider the Millet Street incident as "proof that he had a criminal personality or bad character." This latter instruction was actually contrary to the objected-to, instruction, thus reducing further any possibility that the jurors could have been misled by the erroneous instruction.

second degree. There was no error.[19,20]

9. *Relief pursuant to G. L. c. 278, § 33E.* Having reviewed the whole record, we conclude that there is no reason to exercise our power under G. L. c. 278, § 33E, to order a new trial or to direct entry of a lesser degree of guilt.

*Judgments affirmed.*

*Order denying motion for a new trial affirmed.*

---

[19]The same reasoning disposes of the defendant's contention that the judge, in responding to the jury's request to define murder in the first and second degrees and manslaughter, did not include an instruction on the Commonwealth's burden to disprove self-defense. Because the defendant was not entitled to an instruction on manslaughter, he was not entitled to an instruction on self-defense.

[20]The defendant posits a catch-all argument that "collective error" requires reversal and has denied the defendant due process and a fair trial. Our consideration of the arguments negates this perfunctory claim.