The defendant, Johan Burgos, appeals from his convictions of armed robbery, see G. L. c. 265, § 17, and assault and battery by means of a dangerous weapon, see G. L. c. 265, § 15A. We affirm, addressing the defendant's various claims of error in turn.
1. Prior bad acts. The defendant contends that the trial judge erred in admitting evidence of the defendant's prior bad acts: specifically, the defendant's proximity to a handgun two weeks after the incident. "Evidence showing a defendant's access to firearms may be 'admissible for purposes other than showing a defendant's bad character or criminal propensity.' " Commonwealth v. Bonnett, 472 Mass. 827, 841 (2015), quoting from Commonwealth v. McGee, 467 Mass. 141, 157 (2014). One such purpose is to show that the defendant had the means to commit the crime of which he is accused. See Commonwealth v. Toro, 395 Mass. 354, 356-357 (1985). Proffered evidence of a "weapon that could have been used in the course of a crime is admissible ... even without direct proof that the particular weapon was in fact used in the commission of the crime." Commonwealth v. Barbosa, 463 Mass. 116, 122 (2012). Whether such "evidence is relevant and whether its probative value is substantially outweighed by its prejudicial effect are matters entrusted to the trial judge's broad discretion and are not disturbed absent palpable error." Commonwealth v. Sylvia, 456 Mass. 182, 192 (2010), quoting from Commonwealth v. Simpson, 434 Mass. 570, 578-579 (2001).
We discern no abuse of discretion by the motion judge in his assessment that the probative value of evidence that, on July 18, 2014, thirteen days after the armed robbery, the defendant was observed in a vehicle that was disabled by a collision, with a black handgun on the ground in close proximity just outside the vehicle, outweighed any improper prejudicial effect on the defendant. The evidence was admissible to show that on the date of the charged offense, the defendant had access to a black handgun consistent with the weapon used in the armed robbery. The defendant need not have possessed the gun at the time he was observed in close proximity to it in order for him to have had access to it on the date of the armed robbery. See McGee, supra at 157. Nothing in the description of the circumstances in which the defendant was observed in close proximity to the handgun suggested that he was then engaged in criminal activity or other bad acts. The judge specifically instructed the jury that the defendant did not possess the firearm on July 18, 2014, and they could only consider such evidence to determine whether the defendant had access to a firearm, not as evidence of another criminal offense or bad act. This instruction eliminated the possibility that the jurors would consider the testimony as evidence of possession or other criminal activity.
2. Admission of photograph of defendant. The judge likewise acted within his discretion in admitting a photograph of the defendant taken on July 18, 2014, to show what the defendant looked like close in time to the armed robbery. The judge provided a contemporaneous limiting instruction to the jury that the defendant did nothing wrong on the day the photograph was taken, thereby avoiding any concern that the jury might infer that the photograph was taken incident to wrongdoing by the defendant.
3. Photographic array (array) identification. The defendant also claims that his motion to suppress the identification should have been allowed, because the array shown to the victim was impermissibly suggestive. When evaluating the denial of a motion to suppress on appeal, we accept the motion judge's factual findings unless they are clearly erroneous, but independently determine "the correctness of the judge's application of constitutional principles to the facts as found." Commonwealth v. Bostock, 450 Mass. 616, 619 (2008), quoting from Commonwealth v. Mercado, 422 Mass. 367, 369 (1996). We discern no error in the motion judge's reasoning that the identification of the defendant in the array identification procedure was admissible.
In order to succeed on a motion to suppress a photographic identification, "the defendant must show by a preponderance of the evidence that, in light of the totality of the circumstances, the procedures employed were so unnecessarily suggestive and conducive to irreparable misidentification as to deny the defendant due process of law." Commonwealth v. Miles, 420 Mass. 67, 77 (1995). "There necessarily will be differences in any photographic array, or indeed any lineup. There is no requirement that the defendant's image or person be surrounded by people nearly identical in appearance to his own." Commonwealth v. Montez, 450 Mass. 736, 757 (2008).
The array and the identification procedure utilized in the present case were not unnecessarily suggestive. The detective testified that he assembled the array using an in-house database into which he input information using the victim's description of the assailant and included the defendant's photograph based on knowledge he obtained from inter-departmental bulletins. The array contained a series of eight sequential photographs rather than a simultaneous display of photographs. The motion judge found that the photographs did not show much in the way of gradations in complexion. The procedure was double blind, conducted by a different detective who was uninvolved in the investigation. The identification was carried out after the detective read the full instructions to the victim, which the victim stated he understood. Though the victim wrote in Spanish on the array instructions, there was no indication that he did not comprehend the instructions given in English. The victim then went through all of the photographs and picked out the defendant's photograph, stating he was "very sure" that it was the assailant.[2]
Judgments affirmed.

That the identification from the array was not recorded did not render the identification inadmissible. See Commonwealth v. Silva-Santiago, 453 Mass. 782, 799 (2009).