**Dalton SIMPSON, Petitioner**

v.

**Luis SPENCER, Respondent**

No. CIV.02–10887–RCL.

United States District Court,
D. Massachusetts.

May 18, 2005.

Cathryn A. Neaves, Attorney General's Office, Boston, MA, for Superintendent Luis Spencer, Respondent.

Susanne G. Reardon, Attorney General's Office, Boston, MA, for Superintendent Luis Spencer, Respondent.

## MEMORANDUM AND ORDER ON PETITION FOR HABEAS CORPUS RELIEF

LINDSAY, District Judge.

Before the court is the petition of Dalton Simpson (the "petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). The petitioner is in the custody of the respondent, Luis Spencer, as a result of having been convicted of first-degree murder, unlawful possession of a firearm, and motor vehicle offenses. In a motion to dismiss, the respondent contends that the petition should be denied because the petitioner has not met the standard for the granting of habeas relief under § 2254(d)(1) namely that of showing that the state court's adjudication of the claims at issue was "contrary to" or "an unreasonable application of" federal law as established by the Supreme Court. For the reasons set forth below, I grant the motion to dismiss the petition.

### I. Background

#### A. Factual Background of Underlying Conviction [1]

Following an angry confrontation with a motorist on Millet Street in the Dorchester section of Boston in the late afternoon or early evening of February 5, 1994, the petitioner, driving an automobile bearing a

---

1. The facts recited here are adapted from those set forth in the opinion of the Massachusetts Supreme Judicial Court ("SJC") in *Commonwealth v. Simpson*, 434 Mass. 570, 750 N.E.2d 977 (2001). Under 28 U.S.C. § 2254(e)(1), the SJC's recitation of the factual basis of the conviction is presumed correct. *See Gunter v. Maloney*, 291 F.3d 74, 76 (1st Cir.2002); *Sanna v. Dipaolo*, 265 F.3d 1, 7 (1st Cir.2001); *Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir.2000). The presumption of correctness applies to all "basic, primary, or historical facts" underlying the state court's conclusion, *Sanna*, 265 F.3d at 7, and extends to factual determinations made by both state trial and appellate courts, *Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir.2002), as well as to any factual findings implicit in the state court's ruling, see, *LaVallee v. Delle Rose*, 410 U.S. 690, 692, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973); *Weeks v. Snyder*, 219 F.3d 245, 258 (3d Cir.), *cert. denied*, 531 U.S. 1003, 121 S.Ct. 509, 148 L.Ed.2d 477 (2000). The First Circuit has explained that "[a] habeas petitioner must clear a high hurdle before a federal court will set aside any of the state's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 598 (1st Cir.2001). Specifically, the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

stolen registration plate, encountered a second motorist, Berisford Wayne Anderson ("Anderson") on Spencer Street, a one-way street also in Dorchester. The petitioner had driven at a high rate of speed and the wrong way onto Spencer Street. Anderson was an off-duty Boston police officer who had just pulled out of his driveway onto the street as the petitioner entered the street. The petitioner stopped his car in front of the vehicle driven by Anderson and got out. Anderson opened the driver's side of his vehicle and leaned out. The two men exchanged words briefly. The petitioner then lifted his hand and began shooting at Anderson, who returned fire. After a volley of shots, the petitioner returned to his car and sped away. Meanwhile, Anderson fell to the ground and expired from a single gunshot wound to the chest.

Responding to a radio dispatch concerning the shooting, a Boston police officer encountered the petitioner in a driveway on Crowell Street and ordered him to stop. The petitioner stood by his car for a moment, started to place his hands on top of the vehicle, and then began to run. As he ran, he dropped his gun. The officer retrieved the gun and found it jammed. The officer continued to chase the petitioner and was joined by a second officer, who eventually apprehended the petitioner.

Two other officers transported the petitioner to a police station. During the trip to the station, the petitioner, agitated and claiming that he was in pain, began to kick the door and window of the police car. Once the two officers and the petitioner had arrived at the police station, the petitioner attempted to escape the prisoner bay. As he did so, he was restrained by one of the officers, who pulled on a chain attached to handcuffs that immobilized the petitioner's hands. As a result, the petitioner struck a wall and cut his head. He was transported to a hospital, accompanied by one of the arresting officers. While waiting for a doctor, the petitioner stated: "If I had a bullet, I'd shoot the cop that hurt my head."

At his trial, the petitioner claimed to have acted in self defense with respect to the killing of Anderson. He did not testify, however. His witnesses were a ballistics expert, and one of the emergency medical technicians ("EMT") who transported him to the hospital. The ballistics expert testified that he had examined the petitioner's firearm, which appeared to have been thrown and damaged. The expert stated that a gun like that of the petitioner might jam when it strikes the pavement. The EMT testified that he had treated the petitioner's head wound, and that the petitioner had claimed that he had been assaulted. He described the petitioner as having been extremely agitated and hysterical.

### B. Procedural History of the Petitioner's Case in the State Courts

The petitioner was indicted on charges of the first-degree murder of Anderson, unlawful possession of a firearm, possession of a stolen license plate and operation of a motor vehicle so as to endanger the public. Before empaneling a jury, the trial judge denied the petitioner's motion to sever from the murder indictment the indictments for operation of a motor vehicle so as to endanger the public, possession of a stolen license plate, and unlawful possession of a firearm. On March 1, 1995, the petitioner was convicted on all four indictments. The trial judge then sentenced him to the mandatory term of life imprisonment without the possibility of parole on the conviction for first-degree murder and to a concurrent four-to-five-year prison term on the conviction for unlawful posses-

sion of a firearm. The judge placed the other two indictments on file.[2]

The petitioner filed both a notice of appeal from his conviction and a motion for a new trial, and when the motion for a new trial was denied by the trial judge, the petitioner also appealed that ruling. The Supreme Judicial Court ("SJC") consolidated the direct appeal with the appeal from the denial of the motion for a new trial. On the consolidated appeal, the petitioner argued that the trial judge (1) erred in denying the petitioner's motion to sever the indictments and to transfer venue, (2) improperly admitted irrelevant and prejudicial evidence, (3) erroneously denied a discovery request of the petitioner and thus his access to certain exculpatory evidence, and (4) erred in instructing the jury on several issues. The petitioner also claimed that the prosecutor made improper statements in her opening statement and closing argument. He argued that each of the claimed trial errors and all of them combined violated his due process right to a fair trial. He also argued that the SJC should exercise its extraordinary powers, under Mass. Gen. Laws ch. 278, § 33E, to order a new trial or to reduce his murder conviction to a lesser degree of guilt. On July 13, 2001, the SJC affirmed the convictions and the order denying the motion for new trial, and declined to exercise its power to order a new trial under § 33E. *Commonwealth v. Simpson*, 434 Mass. 570, 750 N.E.2d 977 (2001).

## C. The Present Petition for a Writ of Habeas Corpus

On May 10, 2002, the petitioner filed the present petition for a writ of habeas corpus, claiming that (1) he was denied due process, a fair trial, and effective assistance of counsel by the admission at trial of his statement that, if he had a bullet, he would have shot one of the police officers involved in his apprehension; (2) the trial judge's jury instructions contained substantial errors; (3) the trial was infected with numerous evidentiary errors; (4) prosecutorial misconduct denied him due process of law and a fair trial; (5) he was improperly denied discovery; (6) the prosecutor failed to preserve exculpatory evidence; (7) his due process rights were violated because the court failed to sever his indictments; and (8) cumulative trial errors denied him a fair trial and due process of law. On July 31, 2002, the respondent answered the petition, and on October 7, 2002, he filed a motion to dismiss the petition on the ground that it contained unexhausted claims. The motion was granted and the petition was dismissed on December 2, 2002. On December 19, 2002, the petitioner filed a motion to vacate the judgment dismissing his petition and a motion to amend the petition. On February 11, 2003, I granted his motion and ordered the case stayed until the petitioner had exhausted his state court remedies. On November 17, 2003, the pe-

---

**2.** Massachusetts criminal procedure permits a trial court to place an indictment "on file" if the court "is satisfied that, by reason of extenuating circumstances ... or other sufficient cause, public justice does not require an immediate sentence ...." *Griffiths v. Immigration and Naturalization Service*, 243 F.3d 45, 51 (1st Cir.2001) (quoting *Commonwealth v. Dowdican's Bail*, 115 Mass. 133, 136 (1874)) (internal quotation marks omitted). Placing a case on file "suspends the adjudicative process [as to that indictment] until such time as

the court reactivates or makes some further disposition" of the indictment. *Griffiths*, 243 F.3d at 51 (internal quotation marks and citation omitted). The indictment "then stands on the records of the court, and although usually no further proceedings are had in it, it may at any time be called up and sentence may be imposed, or some other final disposition may be made of it." *Pino v. Nicolls*, 215 F.2d 237, 241 (1st Cir.1954), *rev'd on other grounds sub nom. Pino v. Landon*, 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239 (1955).

titioner moved for reconsideration of the petition, after limiting his claims to those as to which he had exhausted the remedies available to him in state courts. As so limited, the petition is now before the court as to claims 1, 4, 5, 6 and 7 identified above.

## II. Discussion

### A. The Applicable Legal Standards

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a petition for a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless" the state court decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d); *McCambridge v. Hall,* 303 F.3d 24, 34 (1st Cir.2002).[3] For purposes of § 2254(d)(1), "clearly established law as determined by [the Supreme] Court 'refers to holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision.'" *Yarborough v. Alvarado,* 541 U.S. 652, 124 S.Ct. 2140, 2147, 158 L.Ed.2d 938 (2004) (quoting *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Additionally, "the AEDPA amendments to [§ ] 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review .... Only if that decision deviates from the paradigm described in [§ ] 2254(d) can a habeas court grant relief." *O'Brien v. Dubois,* 145 F.3d 16, 20

(1st Cir.1998), *overruled on other grounds by McCambridge,* 303 F.3d at 37. The standard for evaluating the state court's decision is "highly deferential," with "the presumption that state courts know and follow the law" and the requirement that the decisions of the state court "be given the benefit of the doubt." *Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

### 1. The "contrary to" clause

"A state court's decision is 'contrary to' [the Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [the Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court] precedent.'" *Mitchell v. Esparza,* 540 U.S. 12, 15–16, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003) (quoting *Williams,* 529 U.S. at 405–06, 120 S.Ct. 1495). To be contrary to the Supreme Court's clearly established law, the state court's decision must be "'substantially different' from the relevant [Supreme Court] precedent [or] 'diametrically different,' 'opposite in character or nature,' and 'mutually opposed' to [the Supreme Court's] clearly established precedent ...." *Williams,* 529 U.S. at 405–06, 120 S.Ct. 1495. A state court's decision is not "contrary to ... clearly established Federal law" merely because the state court does not cite any Supreme Court cases. *Mitchell,* 540 U.S. at 16, 124 S.Ct. 7. Indeed, the state court "need not even be aware of [the Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contra-

---

**3.** With the exception of the possibility discussed in note 5 *infra,* the parties do not dispute the underlying facts. Therefore,

§ 2254(d)(2) need not be discussed beyond its brief reference in that note.

dicts them.'" *Id.* (internal citation omitted).

### 2. The "unreasonable application" clause

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413, 120 S.Ct. 1495. The Supreme Court has warned, however, that the federal habeas court "may not issue the writ simply because the habeas court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly." *Woodford*, 537 U.S. at 24–25, 123 S.Ct. 357; *Bell v. Cone*, 535 U.S. 685, 699, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). Rather, the habeas applicant must show that the state court's application of federal law to the facts of his case was "objectively unreasonable," as distinguished from being merely "incorrect." *Woodford*, 537 U.S. at 24, 123 S.Ct. 357 (citing *Williams*, 529 U.S. at 410, 120 S.Ct. 1495); *Lockyer v. Andrade*, 538 U.S. 63, 75–76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (noting that, to warrant habeas relief, the state court decision must be "more than incorrect or erroneous" and that its "application of clearly established [Supreme Court] law must be objectively unreasonable"); *see McCambridge*, 303 F.3d at 36 (explaining that "some increment of incorrectness beyond error is required" [internal citation omitted]; stressing that while that increment need not be "great," it must be "great enough to make the decision unreasonable in the independent and objective judgment of the federal court"). Under this standard, the state court's decision may be found unreasonable if "it is devoid of record support for its conclusions or is arbitrary." *McCambridge*, 303 F.3d at 37.

The Supreme Court has taken the view that the range of "reasonable judgment" depends, in part, on the nature of the legal rule to be applied. *Yarborough v. Alvarado*, 124 S.Ct. at 2149. The Court explained that if the relevant legal rule "is specific, the range may be narrow," while if the rule is more general, applying it to a particular case "can demand a substantial element of judgment." *Id.* Thus, the more general the particular legal rule, "the more leeway courts have in reaching outcomes in case by case determinations." *Id.*

With the foregoing standards in mind, I turn to the specific issues raised in this case.

### B. Was the SJC's rejection of the petitioner's claim that he was denied due process, a fair trial, and effective assistance of counsel by the admission of his statement: "If I had a bullet, I would shoot the cop who hurt my head" "contrary to" or "an unreasonable application of" clearly established federal law as declared by the Supreme Court?

### 1. Admission of the Petitioner's Statement

The petitioner contends that he was denied due process of law, a fair trial, and effective assistance of counsel by the admission of his statement: "If I had a bullet, I would shoot the cop who hurt my head." He claims that the statement was not relevant, more prejudicial than probative, and involuntary.[4] In the alternative,

---

4. After the petitioner objected to the admission of the statement, the trial judge conducted a voir dire on whether this statement had

been made voluntarily. The judge concluded that the statement was a voluntary one and was admissible "as evidence of [the petition-

the petitioner argues that, even if the statement were admissible and properly admitted, the judge erred in refusing, over objection, to instruct the jury that this post-crime statement was irrelevant to the determination of his degree of guilt.

■ The SJC determined that the statement was relevant and that the trial judge properly had exercised her discretion in admitting it. In challenging this ruling in the present proceeding, the petitioner faces an immediate hurdle, because a claim that a state trial court admitted irrelevant testimony generally will not invoke the habeas authority of the federal courts. *Palmariello v. Superintendent of MCI Norfolk,* 873 F.2d 491, 494 (1st Cir.1989) (explaining that "habeas review does not ordinarily encompass garden-variety evidentiary rulings"); *Allen v. Snow,* 635 F.2d 12, 15 (1st Cir.1980) ( noting that "[t]he writ of habeas corpus ordinarily will not lie to correct alleged errors in evidentiary rulings"); *see also Nelson v. Moriarty,* 484 F.2d 1034, 1036 (1st Cir.1973) (holding that the admission by state trial court of "allegedly unreliable, hearsay, or irrelevant testimony" did not raise due process issues). With respect to relevance— the particular evidentiary issue the petitioner now raises— the Supreme Court said many years ago: "The Fourteenth Amendment leaves [the states] free to adopt [their own] ... rule[s] of relevance ...." *Lisenba v. California,* 314 U.S. 219, 227–28, 62 S.Ct. 280, 86 L.Ed. 166 (1941).

■ Habeas relief, based on an evidentiary ruling of a state trial court, is available only where the evidentiary ruling in question has made a fair trial impossible. *Lagasse v. Vestal,* 671 F.2d 668, 669 (1st Cir.1982) (noting that an evidentiary ruling "will only provide a basis for issuing a writ of habeas corpus if it is so prejudicial that it renders a fair trial impossible"); *see generally, Lisenba,* 314 U.S. at 228–29, 62 S.Ct. 280. Even then, the fairness of the trial is to be assessed by reference to whether the ruling of the state courts was "contrary to" or "an unreasonable application" of principles of federal law clearly established by Supreme Court precedent.

The question before me, then, is whether the ruling of the trial court—as affirmed by the SJC—that the petitioner's statement was admissible made a fair trial impossible for the petitioner, in violation of his due process rights. Under Massachusetts law, which the SJC is presumed to have applied, "[r]elevant evidence is generally admissible at trial." *Harris–Lewis v. Mudge,* 60 Mass.App.Ct. 480, 485, 803 N.E.2d 735 (2004). "Relevance is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Id.* (internal quotation marks and citation omitted). This definition of relevance is the same as that found in Fed R. Evid. 401. Like the Massachusetts common-law rule, the Federal Rules of Evidence make relevant evidence generally admissible: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority." Fed.R.Evid. 402. The Supreme Court has affirmed that "[r]ules 401 and 402 establish the broad principle that relevant evidence—evidence that makes the

er's] state of mind and his consciousness of guilt." *Simpson,* 434 Mass. at 578, 750 N.E.2d 977. Because the SJC concluded that the statement was relevant to the petitioner's

state of mind, it did not address the trial court's conclusion that the statement was also admissible to show the petitioner's consciousness of guilt. *Id.* at 579 n. 4, 750 N.E.2d 977.

existence of any fact at issue more or less probable—is admissible unless the Rules provide otherwise." *Huddleston v. United States,* 485 U.S. 681, 687, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

The petitioner's position at trial was that he had shot and killed Anderson in self-defense. Under Massachusetts law, a predicate for a claim of self-defense, where deadly force is used, is that the actor "[must have] reasonable ground to believe and actually ... believe that he [is] in imminent danger of death or serious bodily harm, from which he [can] save himself only by using deadly force ...." *Commonwealth v. Barros,* 425 Mass. 572, 575, 682 N.E.2d 849 (1997). Thus, the state of mind with which the petitioner acted was a material issue at trial. The SJC concluded that the statement at issue shed light on that state of mind. Reviewing the relevance of the statement in the context of the other trial evidence, the SJC explained that, "the statement in issue, made shortly after the defendant killed the victim, indicated the defendant's aggressive and threatening behavior on the afternoon in question." *Simpson,* 434 Mass. at 579, 750 N.E.2d 977.

Given the broad discretion of a trial court to determine the relevance of proffered evidence, it is difficult for any reviewing court to conclude that the judge at the petitioner's trial erroneously admitted the petitioner's hospital statement. The petitioner has identified no Supreme Court case—and I have found none— that would deem this evidence irrelevant and preclude its admission on the ground that admission of the evidence would compromise the petitioner's right to a fair trial. Indeed, the SJC's ruling that the trial judge acted within her discretion in admitting the evidence is consistent with the Supreme Court's view that, "in judicial trials, the whole tendency is to leave rulings as to the

illuminating relevance of testimony largely to the discretion of the trial court that hears the evidence." *Hamling v. United States,* 418 U.S. 87, 124–25, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) (internal quotation marks and citation omitted). Accordingly, there is no basis for me to conclude that the trial court's determination of the relevance of the statement and the SJC's affirmance of that determination denied the petitioner a fair trial under clearly established Supreme Court precedent.

The petitioner further argues than that, even if his statement were relevant, it should have been excluded, because its probative value was substantially outweighed by its prejudicial effect. The SJC ruled that the trial judge did not abuse her discretion in determining that any potential prejudicial effect of the statement did not outweigh its probative value. *Simpson,* 434 Mass. at 579, 750 N.E.2d 977. In making this ruling, the SJC applied a well-established principle of the Massachusetts law of evidence: "Whether evidence is relevant in any particular instance, and whether the probative value of relevant evidence is outweighed by its prejudicial effect, are questions within the sound discretion of the judge." *Commonwealth v. Dunn,* 407 Mass. 798, 807, 556 N.E.2d 30 (1990). Because this was an evidentiary ruling, it falls within the principle discussed above that an evidentiary ruling of the state court is not reviewable on a habeas petition unless the ruling prevented the petitioner from receiving a fair trial. The petitioner here has not persuasively argued that the ruling in question compromised his due process right to a fair trial.

The evidentiary standard applied by the SJC is similar to Fed.R.Evid. 403. Like the Massachusetts standard, Rule 403 reposes in the trial judge discretion to exclude relevant evidence if the probative

value of that evidence "is substantially outweighed by the danger of unfair prejudice." Indeed, under the federal rule, the trial judge may exclude relevant evidence simply because it wastes time. Fed. R.Evid. 403. The Supreme Court has referred to Federal Rule 403 as a rule that is "unquestionably constitutional." *Montana v. Egelhoff*, 518 U.S. 37, 42, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (plurality opinion). The petitioner is thus hard-pressed to show that the cognate Massachusetts rule is in itself contrary to established Supreme Court precedent. Nor has he shown that, in applying the Massachusetts rule in his case, the SJC unreasonably applied Supreme Court precedent. The petitioner simply failed to meet the heavy burden of persuading the SJC that the trial judge had abused her discretion in balancing the probative value of the statement against its potential for prejudice to the petitioner. The SJC's cogent analysis of the statement in the context of the evidence as a whole, as discussed above, demonstrates why no constitutional problem is raised by the SJC's rejection of the petitioner's argument.

The petitioner next argues that the statement should not have been admitted because his contemporaneous intoxication made the statement involuntary. In rejecting this argument, the SJC noted that the trial judge had conducted a voir dire as to the voluntariness of the statement. After reviewing the evidence presented at the voir dire, the SJC concluded that the evidence before the trial judge was sufficient *beyond a reasonable doubt* to support her conclusion that the statement was voluntary. *Simpson*, 434 Mass. at 579, 750 N.E.2d 977. In applying the reasonable

doubt standard, the SJC was even more generous than Supreme Court precedent would have been. Under that precedent, the trial judge need only have been persuaded "by a preponderance of proof" that the statement was voluntarily made. *Bourjaily v. United States*, 483 U.S. 171, 174–75, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). It necessarily follows, then, that the SJC did not apply a standard that was contrary to, or an unreasonable application of, Supreme Court precedent.[5]

■ Finally, the petitioner argues, that the SJC's affirmance of the trial court's rejection of one of the petitioner's proposed jury instructions was contrary to, or an unreasonable application of, the Supreme Court's decision in *Sandstrom v. Montana*, 442 U.S. 510, 514, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The petitioner says that he was entitled to an instruction to the effect that the jury could not use the statement as evidence of the degree of guilt unless the jury were persuaded beyond a reasonable doubt that there was a plan, with respect to his conduct, before the shooting. The SJC ruled that the critical question was the relevance of the statement; once the trial court determined that the statement was relevant, no instruction of the kind sought by the petitioner was appropriate. *Simpson*, 434 Mass. at 580, 750 N.E.2d 977. In *Sandstrom*, the Supreme Court held that an instruction to the jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary act" violated the defendant's due process rights by shifting to the defendant the prosecution's burden of proof. *Id. Sandstrom* thus is a case that deals with the question of the possible misinterpretation by a jury of an

---

5. To the extent that the petitioner's argument is that the determination by the state courts that his statement was voluntary implicates § 2254(d)(2), as an unreasonable determina-

tion of facts in light of the evidence, the SJC's analysis makes plain that any such argument is without merit.

instruction concerning an evidentiary presumption, and the effect such a misinterpretation might have had on the presumption of innocence accorded a defendant in a criminal trial. It is inapposite to the claim the petitioner now makes. Because the petitioner has not identified any other Supreme Court precedent to which the SJC's ruling is contrary or of which that ruling is an unreasonable application, he is not entitled to habeas relief on this claim.

> 2. Ineffective Assistance of Counsel with Respect to the Admission of the Petitioner's Statement

■ The petitioner contends that his trial counsel was ineffective because, during the voir dire regarding the voluntariness of the petitioner's hospital statement, his counsel did not "introduce all medical records into evidence." In his brief to the SJC, the petitioner also alleged that his trial counsel was ineffective in failing to call a friend of the petitioner, who would have testified that the petitioner had been drinking on the day of the killing. The petitioner asserted in that brief that this evidence would have shown that his head injury and intoxication rendered his statement involuntary.

Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a habeas petitioner claiming inef-fective assistance of counsel must establish two things. "First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052 (stressing that the [petitioner] must "make[ ] both showings"). There is a strong presumption, under *Strickland*, that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. 2052.[6] To establish ineffectiveness, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional efforts, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.[7] If the petition-

6. The *Strickland* Court emphasized that "[j]udicial scrutiny of counsel's performance must be highly deferential," and that there exists a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 (explaining that the defendant must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy' "); *see Phoenix v. Matesanz*, 233 F.3d 77, 81–82 n. 2 (1st Cir.2000) (citing a case where counsel was found ineffective, because his choice of trial strategy "was so patently unreasonable that no competent attorney would have made it"). The *Strickland* Court also cautioned against employing hindsight in evaluating counsel's performance. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052; *see Phoenix*, 233 F.3d at 81–82 (noting that the reasonableness of counsel's conduct must be judged "on the facts of the case at the time of that conduct").

7. The *Strickland* Court noted that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691, 693, 104 S.Ct. 2052 (requiring that "the [petitioner] affirmatively prove prejudice" from the alleged ineffective assistance)

er fails to satisfy one of the components of the inquiry, the court need not address the remaining component. *Id.* at 697, 104 S.Ct. 2052.

The SJC analyzed the petitioner's claim of ineffective assistance of counsel under the "substantial likelihood of a miscarriage of justice" standard mandated by Mass. Gen. Laws ch. 278, § 33E in cases involving murder in the first degree. The court noted that the § 33E standard is more favorable to a defendant than the traditional, constitutional standard for determining the ineffectiveness of counsel. *Simpson,* 434 Mass. at 581, 750 N.E.2d 977 (citing *Commonwealth v. Wright,* 411 Mass. 678, 682, 584 N.E.2d 621 (1992) (citing *Strickland* )). The court upheld the motion judge's finding that counsel's decisions not to call the petitioner's friend and not to introduce additional medical records were "reasonable tactical ones," because the additional evidence would have been insufficient to support a conclusion that the petitioner's statement was involuntary. *Simpson,* 434 Mass. at 581, 750 N.E.2d 977.[8] The SJC also agreed with the trial judge's conclusion that, regardless of any deficiencies in his attorney's performance, the petitioner "had failed to show any prejudice therefrom." *Id.* The SJC explained that "[t]he [petitioner's] statement was admitted to demonstrate premeditation and there was ample other evidence of [the petitioner's] premeditation" and "a plan to kill" Anderson. *Id.* at 581–82, 750 N.E.2d 977 (reciting the following relevant evidence: eyewitness testimony that the petitioner stopped his car in front of Anderson's van, got out of the car, and, after exchanging a few words with Anderson, began shooting at Anderson, and citing numerous cases in support of its conclusion).

The SJC's decision that the petitioner's counsel did not render ineffective assistance was not "contrary to" or "an unreasonable application of" the *Strickland* standard. Indeed, because the SJC applied a more favorable standard to the performance of the petitioner's counsel than that required by *Strickland,* the petitioner's claim of ineffective assistance was more generously reviewed than it would have been under established federal law. Moreover, even though the SJC found that the petitioner had not established on appeal that his counsel's decisions were unreasonable, the court nevertheless considered whether any prejudice resulted from these decisions and decided that no prejudice had been shown. *See Strickland,* 466 U.S. at 697, 104 S.Ct. 2052 (explaining that if the defendant fails to satisfy one component of the ineffective assistance test, the court need not even address the other component). Under these circumstances, the petitioner falls well short of the mark in establishing that habeas relief is warranted as to his claims of ineffective assistance.

C. Was the SJC's rejection of the petitioner's claim that prosecutorial misconduct denied him due process of law and a fair trial "contrary to" or "an unreasonable application of" clearly established federal law as declared by the Supreme Court?

The petitioner alleges that prosecutorial misconduct resulted in a denial to him of

---

8. The SJC explained that the testimony of the petitioner's friend would have been only that the petitioner appeared "[a] little tipsy" hours before the shooting, and that the omitted medical records did not show that the petitioner "suffered a mind impairing injury" that left him "unable to control what he was saying." *Simpson,* 434 Mass. at 581, 750 N.E.2d 977 (setting forth other substantial evidence contradicting both the petitioner's allegation of intoxication and his claim of a serious head injury).

due process of law and a fair trial. He claims that, in her opening statement and closing argument, the prosecutor made certain statements "that appeal[ed] for sympathy for the victim." Additionally, according to the petitioner, the prosecutor improperly characterized, as an "insult," the argument of the petitioner's counsel that the petitioner shot Anderson in self-defense. Specifically, the petitioner contends that the prosecutor improperly stated that (1) the evidence would show how different the defendant and Anderson were from each other (opening);[9] (2) Anderson's killing was "sad" because the dangerous part of his day was supposed to be over and he should have been able to relax with his family (closing); (3) Anderson was not supposed to be shot in front of his house (closing);[10] and (4) given the evidence presented at trial, the petitioner's claim of self-defense was an "insult" (closing). At trial, the petitioner objected only to the first two statements. *Simpson*, 434 Mass. at 584, 750 N.E.2d 977.

The SJC concluded that the prosecutor's statement, in her opening, to the effect that Anderson was a "good person" and the petitioner a "bad person" was improper. *Id.* The court noted, however, that the trial judge had instructed the jury that the opening was not evidence, and that, in light of this instruction, and the strong evidence against the petitioner, no substantial rights of the petitioner had been affected. *Id.* Similarly, the SJC held improper the prosecutor's statement in her closing argument that it was "sad" that Anderson had been killed at the end of a day when he should have been able to

relax at home. *Id.* The court went on to hold, however, that the trial judge took prompt and appropriate curative action by instructing the jury that the personal opinions of the lawyers were not evidence, but rather the opinions of advocates. *Id.* at 585, 750 N.E.2d 977.

The petitioner also claimed that the statement in the prosecutor's closing to the effect that no one should be shot on his own street, in front of his house, improperly invited the jurors to put themselves in the shoes of Anderson. The SJC concluded, however, that the statement was a mere rhetorical flourish, and that, in any event, the statement was a fair inference from the evidence. *Id.* As to the statement of the prosecutor, in her closing, that the petitioner's claim of self-defense was "an insult," the SJC held that the statement was merely "enthusiastic rhetoric" designed to demonstrate the lack of evidentiary support for the claim of self-defense. *Id.* at 586, 750 N.E.2d 977.

As the respondent points out, there is no "rule in the Supreme Court's due process jurisprudence that can fairly be said to require a particular result in these circumstances." Memorandum of the Respondent in Opposition to Petition for Writ of Habeas Corpus at 18. It is clear, however, that federal habeas courts do not exercise broad supervisory power over state courts; the proper focus for the habeas court is "the narrow one of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Thus, the Supreme Court has emphasized that "not every trial error or infirmity which

9. The prosecutor stated that the evidence will show that Anderson was "a family man, a man trained and devoted to the protection of others," while the defendant had manifested "complete disregard for human life." *Simpson*, 434 Mass. at 584, 750 N.E.2d 977.

10. The prosecutor said: "No one's supposed to be shooting at you when you're on your own street, when you're just feet from your house with your family inside." *Id.* at 585, 750 N.E.2d 977.

might call for application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.'" *Id.* (quoting *Lisenba,* 314 U.S. at 236, 62 S.Ct. 280). In the context of a claim like the one now at issue, the Court has said: "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with a fairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (internal quotation marks and citations omitted); *see also Smith v. Phillips,* 455 U.S. 209, 210, 221, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (stressing that "[f]ederal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension" and observing that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor")

A trial is an event of many interrelated parts. As the Supreme Court explained in *DeChristoforo,* "a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge." *Id.* at 645, 94 S.Ct. 1868. Any one statement in an opening or closing, is but a fraction of the larger presentation by the lawyer, and the opening or closing itself, in turn, "is but one of several components of the trial which may result in the judgment of conviction." *Id.*

■ Here, the SJC noted that the challenged remarks were only a small and isolated parts of lengthy statements of the prosecutor, and that they were made against a backdrop of substantial and weighty evidence against the petitioner and instructions to the jury that the opening statements and closing arguments of the lawyers were not evidence. *Simpson,* 434 Mass. at 582–85, 750 N.E.2d 977. Because the petitioner made a broad claim that his due process right to a fair trial was violated,[11] the SJC necessarily was required to view the prosecutor's remarks in the context of the trial as a whole; that is the approach demanded both by logic and by Supreme Court precedent. *See DeChristoforo,* 416 U.S. at 643, 94 S.Ct. 1868 (concluding, after "examination of the entire proceedings," that improper remarks made by the prosecutor in that case had not "so infected the trial with unfairness as to make the resulting conviction a denial of due process"); *Darden,* 477 U.S. at 181–82, 106 S.Ct. 2464 (concluding that the prosecutor's comments, set forth in detail in footnotes 9–12 of the opinion, did not deprive the defendant of a fair trial, in part, because the court "instructed the jurors several times that the arguments of counsel were not evidence," and because the "weight of the evidence against the [defendant] was heavy"); *Smith,* 455 U.S. at 219–21, 102 S.Ct. 940 (discussing several cases where the due process analysis focused on "the misconduct's effect on the trial" as a whole). What the Supreme Court said in *DeChristoforo* applies to the SJC's assessment of the remarks challenged by the present petitioner and found improper by the SJC: the remarks comprised "but ... moment[s] in an extended

11. The petitioner does not claim that he was denied "the benefits of a specific provision of the Bill of Rights, such as the right to counsel, [or that] the prosecutor's remarks so prejudiced a specific right, such as the privilege against compulsory self-incrimination, as to amount to a denial of that right." *DeChristoforo,* 416 U.S. at 643, 94 S.Ct. 1868 (explaining that "when specific guarantees of the Bill of Rights" are involved, the Court takes great care in assuring that the prosecutor's conduct does not "impermissibly infringe [] them").

trial and [were] followed by specific disapproving instructions." *DeChristoforo,* 416 U.S. at 645, 94 S.Ct. 1868.

In light of the foregoing, the petitioner is not entitled to habeas relief with respect to his claim of improper conduct by the prosecutor. He has not shown that the SJC's resolution of this claim, after the court assessed whether the alleged misconduct had affected the fundamental fairness of the trial, was contrary to or involved an unreasonable application of federal law as pronounced by the Supreme Court.

> D. Was the SJC's rejection of the petitioner's claim that he was improperly denied discovery "contrary to" or "an unreasonable application of" clearly established federal law as declared by the Supreme Court?

The petitioner contends that the trial judge improperly, and in violation of his Sixth Amendment right of confrontation, refused to allow discovery of the Anderson's personnel file, including the records pertaining to Anderson's prior use of firearms and any complaints against him concerning the use of excessive force. The petitioner also claims that his due process rights were violated, because the court did not order "the disclosure of the [government's] expert opinions" before trial.

 As to the claim of the petitioner that he was improperly denied access to Anderson's personnel records, the SJC ruled that the trial court had committed no error, because the records in question were not relevant. *Simpson,* 434 Mass. at 577, 750 N.E.2d 977. The court reasoned that "[a]lthough the [petitioner] claimed self-defense, [he] never placed before the judge either at trial or at the motion hear-

ing any evidence that [Anderson] was the aggressor, that [Anderson] took out his gun before the [petitioner] shot at him, that [Anderson] fired first, or that the [petitioner] was aware at the time of the incident of any act of violence by [Anderson]." *Id.* In the SJC's view, Anderson's personnel records would have been relevant, only if they assisted in establishing that Anderson was a dangerous or violent person, and that the petitioner was aware of this aspect of Anderson's character.

Citing *Commonwealth v. Bowler,* 407 Mass. 304, 310, 553 N.E.2d 534 (1990) and Mass. R.A.P. 16(a)(4), the SJC noted, as to the petitioner's second discovery claim, that his argument that he was improperly denied pretrial disclosure of the opinions of the prosecution's expert witnesses was not supported by "reasoned argument or citation." The SJC therefore refused to consider the claim. *Simpson,* 434 Mass. at 577 n. 3, 750 N.E.2d 977.

 Any evaluation of the merits of the petitioner's claims concerning the denial of discovery must begin with the well-established proposition that "[t]here is no general constitutional right to discovery in a criminal case ...." *United States v. Caro–Muñiz,* 406 F.3d 22, 28–29 (1st Cir. 2005) (quoting *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977)). A defendant, of course, must be provided, under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), with any evidence that is exculpatory.[12] Exculpatory evidence is evidence that "is material either to guilt or punishment." *Id.* at 87, 83 S.Ct. 1194. "[E]vidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the

---

**12.** Exculpatory evidence includes evidence that can be used to impeach the prosecution's witnesses. *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *see also* Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

proceedings would have been different.'" *Strickler v. Greene,* 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Rosario–Peralta,* 175 F.3d 48, 53 (1st Cir.1999) (internal quotation marks and citation omitted).

In rejecting the petitioner's argument that he was entitled to Anderson's personnel records, the SJC implicitly concluded that petitioner had not made a showing that these records would be material to his claim of self-defense, within the meaning of *Brady. See Caro–Muñiz,* 406 F.3d at 29–30 (explaining that "to establish a violation of *Brady,* a defendant must provide the court with some indication that the materials to which he needs access... contain material and potentially exculpatory evidence") (quoting *United States v. Brandon,* 17 F.3d 409, 456 (1st Cir.1994)). The SJC concluded that the trial court had conducted a proper balancing of the need of the petitioner for the material and the privacy interests that arguably attach to records of this kind. Accordingly, the SJC did not disturb the trial court's denial of the petitioner's motion for the production of Anderson's personnel records. *See Roviaro v. United States,* 353 U.S. 53, 60–62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) (observing, in the context of determining whether to allow the government to protect the identity of an informant from discovery by a defendant, that "[t]he problem is one that calls for balancing the public interest in protecting ˙ the flow of information against the individual's right to prepare his defense" and setting forth the following factors relevant to the balancing test: "the crime charged, the possible defenses, [and] the possible significance of [the information sought to be discovered]"). No different result from that reached by the SJC, as to this discovery claim, is dictated by *Brady* or any other Supreme Court precedent.

The petitioner's second discovery claim need not detain me. He has shown no error of a constitutional dimension with respect to the SJC's refusal to hear the claim that he was denied due process because the trial judge did not order the disclosure of the opinions of the prosecution's expert. Indeed, the petitioner has shown no error of any kind in the refusal of the SJC to hear argument on this issue. As the SJC noted, the petitioner offered no reasoned argument or citation to authority. *Simpson,* 434 Mass. at 577 n. 3, 750 N.E.2d 977. The petitioner's "argument" in support of his claimed entitlement to the expert opinions consisted of two sentences, unsupported by a citation to the record or to any controlling precedent. He cannot complain justifiably that the SJC should have been more attentive to his claim that he was. Most appellate courts follow the same course, generally considering only those arguments that litigants develop and seriously make. *See Wojcik v. Massachusetts State Lottery Com'n,* 300 F.3d 92, 105 (1st Cir.2002) (refusing to consider undeveloped arguments); 5 Am. Jur. 2D Appellate Review § 552 (explaining that [t]he appellate court will consider only issues that are supported by citation to authority ... and by argument or analysis").

The petitioner is not entitled to habeas relief on his discovery claims.

E. Was the SJC's rejection of the petitioner's claim that he was denied due process because the prosecutor failed to preserve exculpatory evidence "contrary to" or "an unreasonable application of" clearly established federal law as declared by the Supreme Court?

 The petitioner contends that the prosecutor failed to preserve certain excul-

patory evidence, specifically Anderson's van, which was returned to Anderson's family. The petitioner alleges that the van was relevant both to the opinion expressed by the prosecutor's experts, and to the petitioner's defenses. In particular, in his brief to the SJC, the petitioner contended that his ballistics expert needed to examine the van to determine the angles of the bullet holes in it to support the petitioner's theory that at first, his shooting was "wild ... and not intended to hit the victim." *Simpson*, 434 Mass. at 570, 750 N.E.2d 977.

Supreme Court precedent draws a clear distinction between the failure to preserve "material exculpatory evidence" and the failure to preserve merely "potentially useful evidence." As noted earlier, in *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 86–87, 83 S.Ct. 1194.[13] In *Arizona v. Youngblood*, 488 U.S. 51, 57–58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), the Court explained that *Brady* only applies to "material exculpatory evidence" and that "the Due Process Clause requires a different result when [the courts] deal with the [prosecution's] failure ... to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id.* at 57–58, 109 S.Ct.

333 (explaining that the difference in treatment stems in part from the Court's "unwillingness to read the 'fundamental fairness' requirement of the Due Process Clause ... as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution"). The Court held that the prosecution's "failure to preserve potentially useful evidence" does not violate due process "unless a criminal defendant can show bad faith on the part of the police." *Id.* at 58, 109 S.Ct. 333; *see Illinois v. Fisher*, 540 U.S. 544, 124 S.Ct. 1200, 1202, 157 L.Ed.2d 1060 (2004) (concluding that the defendant failed to establish a due process violation where the prosecution, acting in good faith, failed to preserve "potentially useful evidence").

In evaluating the prosecutor's claim, the SJC explained that when potentially exculpatory evidence [14] is lost or destroyed, the court must use a balancing test "to determine the appropriateness and extent of remedial action," in light of "the culpability of the Commonwealth, the materiality of the evidence and the potential prejudice to the defendant." *Simpson*, 434 Mass. at 577, 750 N.E.2d 977 (quoting *Commonwealth v. DiBenedetto*, 427 Mass. 414, 419, 693 N.E.2d 1007 (1998)). The court noted that the petitioner did not contest the trial court's finding that the Commonwealth "did not act in bad faith in returning the van to the victim's family." *Simpson*, 434 Mass. at 578, 750 N.E.2d 977. The SJC

**13.** The Supreme Court later held that the duty of the prosecution to disclose exculpatory evidence arises "even if no request is made." *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

**14.** Although the SJC used the phrase "potentially exculpatory evidence," it is clear from the nature of the evidence and the SJC's discussion of it in the context of the trial evidence as a whole, that the SJC's phrase was meant to convey the concept of "potentially useful evidence," as described in *Youngblood* and *Fisher*.

observed, in addition, that the petitioner had "at least nine months (during which he was represented by counsel)" to view the van. *Id.* The court explained that the evidence that might have been obtained from the van was not material, because "there was eyewitness testimony" that the petitioner aimed and repeatedly fired at the victim. *Id.* (noting that the evidence is "material if, considering the entire record, it creates a reasonable doubt as to the defendant's guilt that would not otherwise exist" [internal citation omitted] ). Finally, the SJC noted that the defense had access to photographs of the van showing the location of the bullet holes. *Id.* Based on these considerations, the SJC concluded that the petitioner was not prejudiced by the Commonwealth's return of the van to Anderson's family. *Id.*

Viewing the record as a whole, the van evidence was at most "potentially useful;" it was not itself materially exculpatory in the sense that, had it been provided, there is a reasonable probability that "the result of the proceedings would have been different." *Strickler,* 527 U.S. at 280, 119 S.Ct. 1936. To establish a constitutional violation, then, the petitioner must show that law enforcement officials returned the van to Anderson's family and failed to make it available to the petitioner in bad faith. *See Youngblood,* 488 U.S. at 58, 109 S.Ct. 333; *Fisher,* 124 S.Ct. at 1202. But as noted earlier, the SJC's opinion indicates that the petitioner did not contest the trial court's finding that the relevant law enforcement officials did not act in bad faith. Accordingly, the SJC's rejection of the petitioner's contentions as to this claim was not contrary to nor an unreasonable application of federal law as set forth in *Youngblood* and *Fisher.*

F. Was the SJC's rejection of the petitioner's claim that his due process rights were violated because the trial court failed to sever the indictments "contrary to" or "an unreasonable application of" clearly established federal law as declared by the Supreme Court?

■ The petitioner contends that his due process rights were violated by the trial court's failure to sever the indictment for unlawful possession of a firearm from the remaining three indictments. The illegal possession of the firearm, the petitioner says, portrayed him as a person without regard for human life.

The petitioner's severance claim is frivolous. It amounts to this: in a trial on the murder indictment, in which the evidence would be that the instrumentality of the homicide was a firearm and that the petitioner, in full road rage after leaving an altercation with one motorist, engaged in a shootout with another motorist, the trial court should have severed the indictment charging illegal possession of the firearm, because that indictment unfairly depicted the petitioner as a man with little regard for human life. The mere recitation of the scenario inherent in the petitioner's argument reveals its absurdity. But the SJC addressed the argument without comment on its frivolousness. I will take my cue, then, from that great court and say no more in disparagement of the character of the petitioner's severance claim.

In analyzing the petitioner's severance claim, the SJC pointed to Mass. R.Crim. P. 9(a)(3), which provides that offenses are related "if they are based on the same criminal conduct" and requires that the trial judge join "related offenses" for trial "unless [ the judge] determines that joinder it is not in the best interests of justice." *Simpson,* 434 Mass. at 575–76, 750 N.E.2d 977. The SJC explained that of-

fenses are "related" when the totality of the evidence "shows a common scheme and pattern of operations that tends to prove all the indictments," and noted that the decision regarding joinder of related offenses is within the sound discretion of the trial judge. *Simpson,* 434 Mass. at 576, 750 N.E.2d 977. The court concluded that the trial judge had not abused her discretion in denying the petitioner's motion to sever the firearm indictment from the remaining indictments, because the offenses at issue were related in that "they were based on the same criminal conduct, [the petitioner's] irrational and aggressive behavior on the afternoon on February 5, 1994." *Id.* The weapon that was the subject of the firearm indictment was the weapon used to kill Anderson, and "the evidence regarding the firearm charge was intertwined with the evidence concerning" the remaining three indictments." *Id.*

The petitioner has identified no Supreme Court case— and the court has been unable to find one— that addresses the claim that, in the circumstances presented here, a court's failure to sever indictments (or counts in a single indictment) violates a defendant's right to a fair trial under the Due Process Clause.[15] The petitioner's reliance on *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) is misplaced. In *Bruton,* the Supreme Court held that the admission, in a joint trial, of a codefendant's confession implicating the defendant violated the defendant's Sixth Amendment right to cross-examine witnesses when the codefendant did not testify. *Bruton,* 391 U.S.

at 126, 88 S.Ct. 1620 (explaining that the trial court's clear and understandable instruction to the jury that the confession could only be used against the codefendant did not cure the prejudice to the defendant). No *Bruton* problem, however, arises in the circumstances of this case. Moreover, the petitioner has not shown that he was otherwise prejudiced by the failure the trial judge to sever the indictments.[16]

Because the petitioner has not identified a Supreme Court case against which the SJC's ruling is to be measured, he has failed to sustain his burden of showing that the SJC's decision as to the severance claim was contrary to, or an unreasonable application of, Supreme Court precedent.

## CONCLUSION

For the foregoing reasons, the petitioner's request for habeas corpus relief is DENIED. The clerk shall enter judgment dismissing the petition.

In disposing of the petitioner's claims, I have written extensively. The length of this memorandum and order, however, is no indication of any novelty or complexity in the issues raised; it is merely a reflection of the *number* of such issues. The salient point is that, in none of his claims, has the petitioner made "a substantial showing of the denial of the constitutional right" by demonstrating that "jurists of reason could disagree with the ... resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell,*

---

**15.** The petitioner does not claim— indeed he cannot claim seriously— that the evidence regarding the possession of the firearm was unrelated to the evidence regarding the murder indictment.

**16.** The burden of establishing prejudice is on the defendant, and refusal to grant a sever-

ance generally will be affirmed on appeal even if "the circumstances are such that a grant of severance would have been sustainable." 1A Charles Alan Wright & Arthur Miller, FEDERAL PRACTICE AND PROCEDURE § 227 (3d.ed 1999) and cases cited.

537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Accordingly, no certificate of appealability will issue.

SO ORDERED.